**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | **No. 99 CR 952-1** |
| **v.** | ) | |
| | ) | **Chief Judge Rubén Castillo** |
| **THOMAS KING.** | ) | |

## MEMORANDUM OPINION AND ORDER

On May 18, 2012, Defendant Thomas King moved this Court to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(2) and Part A of Amendment 750 to the United States Sentencing Guidelines (the "Guidelines"). On February 14, 2013, the Court granted King's motion and reduced his sentence to a term of 170 months incarceration. This reduced sentence represents a downward departure from the low-end of the applicable amended Guidelines sentencing range of 235 months incarceration. Immediately after the Court issued its Order, the Government moved to stay, arguing principally that the Court had committed an error in imposing the reduced sentence as a result of either failing to apply or incorrectly applying the current version of the policy statement at Section 1B1.10 of the Guidelines, titled "Reduction in Term of Imprisonment as a Result of Amended Guideline Range, Policy Statement." Subsection (b)(2)(A) of Section 1B1.10 states, in part, that "the court shall not reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) and this policy statement to a term that is less than the minimum of the amended guideline range." In *Dillon v. United States*,—— U.S.——, ——, 130 S. Ct. 2683, 2690-94 (2010), the Supreme Court held this policy statement to be mandatory and binding on sentencing courts. With the Government's consent, the Court converted its motion to stay into a motion for reconsideration. (R. 957, Min. Entry.) For the reasons set forth below, the Government's motion to reconsider is denied.

1

## I. Background

On February 9, 2000, King was indicted by a federal grand jury of one count of conspiracy to distribute in excess of 50 grams of cocaine base (otherwise known as "crack" or "crack cocaine") in violation of 21 U.S.C. § 841(a)(1) (Count I); one count of possession with intent to distribute 123.5 grams of cocaine in violation of 21 U.S.C. § 841(a)(1) (Count II); and three counts of using a communications facility to facilitate a drug crime in violation of 21 U.S.C. § 843(b) (Counts III-VI).  On July 5, 2000, this Court entered King's plea of not guilty. (R. 120, Min. Entry.)  King, along with six of his co-defendants, proceeded to trial commencing on January 16, 2001.  (R. 269-279, 280-282, 284-305, Trial.)  At trial, King took the stand and testified in his own defense with respect to his role in the offense—perjuriously, as was later uncovered.  On February 13, 2001, the trial concluded, and the case was submitted to the jury. (R. 307, Min. Entry.)  On the same day, the jury returned a verdict against King, finding him guilty on all six counts of the indictment.  (R. 309, Verdict.)

Using the then-mandatory 2000 version of the Guidelines,[1] the Court calculated that King's applicable base offense level, for Counts I through VI based on "at least 1.5 kilograms" of crack cocaine, was 38.  *See* USSG § 2D1.1(c)(4) (2000 ed.); (R. 444, Sent. Order).  The Court determined that King's prior misconduct placed him in Criminal History Category III.  *See* USSG § 4A1.1 (2000 ed.); (R. 444, Sent. Order).  In addition, the Court made a two-level upward adjustment to King's offense level for obstruction of justice based on his perjurious testimony at trial, resulting in a total adjusted offense level of 40.  *See* USSG § 2D1.1(c)(3) (2000 ed.); USSG § 3C1.1 (2000 ed.).  This produced a mandatory sentencing range of 360

---

[1]   Under the Sentencing Reform Act of 1984, sentencing courts are to use the Guidelines "in effect on the date the defendant is sentenced."  18 U.S.C. § 3553(a)(4)(A)(ii); *accord Dorsey v. United States*,—— U.S. ——, ——, 132 S. Ct. 2321, 2332 (2012).  Although King was sentenced in 2001, the 2001 Guidelines did not come into effect until November 1, 2001.

months to life incarceration.  *See* 21 U.S.C. § 841(b)(1)(A)(ii) and (iii) (2000 ed.); USSG, ch. 5, pt. A, Sentencing Table (2000 ed.).  The Court therefore sentenced King to a term of 360 months incarceration on Count I, to a concurrent sentence of 240 months incarceration on Count II, and to concurrent sentences of 48 months incarceration on each of Counts III through VI.  (R. 444, Sent. Order.)

King appealed both his conviction and his sentence to the United States Court of Appeals for the Seventh Circuit.  *United States v. McGee*, 408 F.3d 966 (7th Cir. 2005).  The Seventh Circuit affirmed King's conviction, but it ordered a limited remand with respect to his sentence pursuant to *United States v. Paladino*, 401 F.3d 471 (7th Cir. 2005).  408 F.3d at 989.  The Seventh Circuit held that in light of *United States v. Booker*, the Guidelines were no longer mandatory, and the Court had violated the Sixth Amendment in making its factual findings.  *Id*. at 987 (citing *Booker*, 543 U.S. 220 (2005) (Stevens, J., opinion of the Court in part—merits majority opinion)).

Under a *Paladino* remand, in the case of a sentence rendered under the Guidelines before *Booker* relegated them to advisory status, the Seventh Circuit "order[s] a limited remand to permit the sentencing judge to determine whether he would (if required to resentence) reimpose his original sentence."  401 F.3d at 484.  "If so, [the Seventh Circuit] will affirm the original sentence against a plain-error challenge provided that the sentence is reasonable."  *Id*. (citing *Booker*, 543 U.S. at 268 (Breyer, J., opinion of the Court in part—remedial majority opinion)).  "If, on the other hand, the judge states on limited remand that he would have imposed a different sentence had he known the guidelines were merely advisory, [the Seventh Circuit] will vacate the original sentence and remand for resentencing."  *Id*.

On the limited *Paladino* remand, this Court determined that it was "unable to say that it would have imposed the same sentences in this unusual drug conspiracy case if it had known that the Sentencing Guidelines were merely advisory." (R. 701, Min. Entry.) Therefore, the Court "respectfully request[ed] that all defendants' cases be fully remanded for new resentencing proceedings." (*Id.*) Accordingly, the Seventh Circuit vacated King's sentence and remanded the case for a full resentencing. *United States v. McGee*, 157 F. App'x 894 (7th Cir. 2005). After several delays due to the filing of various briefs and assorted motions, including numerous motions for extensions of time made by both King and the Government, the Court decided to further delay King's resentencing until the Supreme Court issued its opinion in *Kimbrough v. United States*, 127 S. Ct. 2933, No. 06-6330 (Cert. Granted June 11, 2007), which was argued on October 2, 2007, 2007 WL 2847117, No. 06-6330 (Oral Argument Oct. 7, 2007). (R. 780, Min. Entry.) The Supreme Court issued its opinion in *Kimbrough*, 552 U.S. 85 (2007), on December 10, 2007.

When a case is remanded for resentencing, the court must use the Guidelines in effect at the time of the original sentencing, even if they have changed in the meantime. 18 U.S.C. § 3742(g)(1); *see also United States v. Tanner*, 544 F.3d 793, 797 (7th Cir. 2008). Nevertheless, a resentencing court is not precluded from considering subsequent retroactive amendments to the Guidelines. *See, e.g.*, *United States v. Bruce*, 550 F.3d 668, 676 (7th Cir. 2008) ("[T]he decision to apply the retroactivity in any individual case lies within the sound discretion of the district court.") (citing 18 U.S.C. § 3742(g)(1); 18 U.S.C. § 3582(c)(2); *Tanner*, 544 F.3d at 797; *United States v. Lloyd*, 398 F.3d 978, 979 (7th Cir. 2005)) (internal citations omitted); *accord United States v. Taylor*, 648 F.3d 417, 427-28 (6th Cir. 2011) ("We do not read Congress's intent in [Section 3742(g)(1)] . . . to be so broad as to foreclose or discourage the district court from

considering postsentencing amendments to the Guidelines when determining an appropriate

sentence."). In keeping with this principle, the Government expressed its position that when

resentencing King, the Court should apply Amendment 706, which had not yet become

retroactive, but which the United States Sentencing Commission (the "Commission") added to

the list of amendments that may be applied retroactively effective March 3, 2008. (R. 800,

Gov.'s Supp. Sent. Mem. at 4, 8.) The Government further stated that Amendment 706, which

amended Section 2D1.1, would decrease King's base offense level from 38 to 36. (*Id*. at 7.)

On January 29, 2008, the Court resentenced King using the 2000 version of the

Guidelines.[2] (R. 813, Min. Entry.) The Court also applied Amendment 706 which reduced the

base offense level for "at least 1.5 kilograms" of crack cocaine from 38 to 36. *See* USSG

§ 2D1.1(c)(1) (2007 ed.); USSG, App. C., Amdt. 706 (2007). After the Court added the two-

level upward adjustment for obstruction of justice, King's total adjusted offense level on

resentencing was 38. *See* USSG § 2D1.1(c)(1) (2007 ed.); USSG § 3C1.1 (2000 ed.). With a

Criminal History Category of III, this resulted in an advisory Guidelines sentencing range of 292

to 365 months incarceration. *See* USSG ch. 5, pt. A, Sentencing Table (2000 ed.). In the

exercise of its discretion, the Court resentenced King to 264 months incarceration on Count I,

240 months incarceration on Count II, and 48 months incarceration on Counts III to VI, all to run

concurrently. (R. 808, Amend. J.) King appealed his new sentence, and the Seventh Circuit

summarily affirmed. *See United States v. King*, 296 F. App'x 540 (7th Cir. 2008).

---

[2] To the extent that the February 14, 2013 Order indicates that the Court applied the Guidelines
in effect in 2008 at King's resentencing, this was a scriveners error. (R. 950, Order at 2.) The
Court, consistent with Congress's mandate, *see* 18 U.S.C. § 3742(g)(1), correctly applied the
Guidelines in effect at the time of the original sentencing at King's resentencing. (R. 808,
Amend. J.)

II.     **Procedural History**

        A.     **King's motion for a reduced sentence**

On May 18, 2012, King moved this Court to reduce his sentence pursuant to Section 3582(c)(2) and Part A of Amendment 750 to the Guidelines, which took effect on November 1, 2011, and made permanent adjustments to the offense levels in Section 2D1.1 for various quantities of crack cocaine. *See* USSG, App. C, Amdt. 750 (2011); (R. 930, Def.'s Mot.).  King calculated his amended Guidelines offense level to be 34, which produced an applicable Guidelines sentencing range of 188 to 235 months incarceration.  (R. 930, Def.'s Mot. at 5.) King pointed out that at his 2008 resentencing the Court departed roughly 9.5% from the low-end of the applicable Guidelines sentencing range and asked for a comparable reduced sentence of 170 months incarceration (170 months being roughly 9.5% below 188 months).  (*Id.*)  The Government responded in opposition to King's motion on June 11, 2012.  (R. 934, Gov.'s Resp.) King replied on June 19, 2012, and admitted that when he initially moved for a reduced sentence of 170 months incarceration, he had committed an error in calculating his amended Guidelines offense level as well as his applicable Guidelines sentencing range because he forgot to add the two-level enhancement for obstruction of justice.  (*Id.* at 4 n.2.)  King corrected the error and stipulated that his applicable Guidelines sentencing range was, in fact, 235 to 293 months incarceration.  (*Id.* at 4.)

On February 13, 2013, the Court held a hearing on King's motion in open Court.  (R. 948, Min. Entry.)  The Government failed to appear, and thus no opposition was presented to the Court on King's motion for a reduced sentence.  The Court issued an Order granting King's motion and reducing his sentence to 170 months incarceration on February 14, 2013.  (R. 951, Order.)  King's reduced sentence immediately set him free from federal custody.

### B.    The present controversy

The day after the Court granted King's Section 3582(c)(2) motion, the Government filed an "Emergency Motion to Stay the Court Order of February 14, 2013, Reducing Defendant's Sentence to 170 Months-Time Served."  (R. 953, Gov.'s Emerg. Mot.)  In its "Emergency Motion," the Government argued that Section 1B1.10(b)(2)(A) prohibited the Court from reducing King's sentence to a term of imprisonment that was less than the minimum of his amended Guidelines sentencing range.  (*Id.* at 2) (quoting USSG § 1B1.10(b)(2)(A) (2012 ed.) (Reduction in Term of Imprisonment as a Result of Amended Guideline Range) (Policy Statement)).  The Government had previously made this argument in its response to King's motion.  (R. 935, Def.'s Resp at 19-20.)

On February 19, 2013, King responded to the Government's "Emergency Motion," contending that because the Government never responded to his repeated arguments that he was entitled to a reduction below the amended Guidelines range pursuant to Section 3582(c)(2) and Section 1B1.10, and failed to appear at the February 13, 2013 hearing, it had waived that argument.  (R. 956, Def.'s Resp.)  King responded to the Government's "Emergency Motion" on February 19, 2012.  (R. 956, Def.'s Reply.)  On February 20, 2013, with the Government's consent, the Court converted the Government's "Emergency Motion" into a motion to reconsider.  (R. 957, Min. Entry.)  The Government filed a voluminous reply in support of its motion on February 28, 2013.  (R. 959, Gov.'s Reply.)

After a review of all the pleadings, the Court gave King the opportunity to file a sur-reply to what had become the Government's motion to reconsider.  (R. 960, Min. Entry.)  King filed his sur-reply on June 3, 2013, articulating a number of bases upon which the Court's initial Order should stand.  (R. 967, Def.'s Sur-Reply.)  On June 17, 2013, the Government, without leave of

the Court or upon request, sought to file *instanter* what it styled as "Government's Sur-Reply Memorandum in Support of its Motion to Reconsider Court Orders Entered on February 14, 2013." (R. 968, Gov.'s Sur-Reply Request.) Although the Court did not request the Government to file a sur-reply nor grant it leave to do so, the Court nevertheless allowed the Government to file its sur-reply *instanter*. (R. 970, Min. Entry.).

## III. Legal Standard for a Motion to Reconsider

A "motion to reconsider" does not exist under the Federal Rules of Civil Procedure. *Talano v. NW. Med. Faculty Found.*, 273 F.3d 757, 760 n.1 (7th Cir. 2001). Thus, a motion that seeks to challenge the merits of a ruling by a district court will automatically be considered as having been filed under either Rule 59(e) or Rule 60(b) of the Federal Rules of Civil Procedure. *Mares v. Busby*, 34 F.3d 533, 535 (7th Cir. 1994). "Although both Rules 59(e) and 60(b) have similar goals of erasing the finality of a judgment and permitting further proceedings, Rule 59(e) generally requires a lower threshold of proof than does Rule 60(b)." *Romo v. Gulf Stream Coach, Inc.*, 250 F.3d 1119, 1121 n.3 (7th Cir. 2001). Furthermore, "the grounds for relief under Rule 60(b) are more limited than those for relief under Rule 59(e)." *Tango Music, LLC v. DeadQuick Music, Inc.*, 348 F.3d 244, 247 (7th Cir. 2003). The Seventh Circuit has described the standard for granting relief under Rule 60(b) as "exacting," while it has described Rule 59(e)'s standard to be "more liberal" *Ball v. City of Chi.*, 2 F.3d 752, 760 (7th Cir. 1993).

The Seventh Circuit has adopted a bright-line test to determine whether a motion challenging a judgment on the merits should be considered under Rule 59(e) or Rule 60(b). *United States v. Deutsch*, 981 F.2d 299, 300-01 (7th Cir. 1992). "If the motion is served within [twenty-eight] days of the rendition of judgment, the motion falls under Rule 59(e); if it is served after that time, it falls under Rule 60(b)." *Id.* (quoting *Lavespere v. Niagara Mach. & Tool*

*Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990)) (internal quotation marks omitted).[3] The

Government's motion to reconsider was filed within Rule 59(e)'s prescribed time period of 28

days after the entry of the judgment. (R. 968, Gov.'s Sur-Reply.) Thus, the Government's

motion falls under Rule 59(e).

Motions for reconsideration under either Rule 59(e) or Rule 60(b) are not appropriate

vehicles for relitigating arguments that the district court previously rejected, or for arguing issues

or presenting evidence that could have been raised during the pendency of the motion presently

under reconsideration. *Sigsworth v. City of Aurora*, 487 F.3d 506, 512 (7th Cir. 2007). "Once

judgment has been entered, there is a presumption that the case is finished, and the burden is on

the party who wants to upset that judgment to show the court that there is good reason to set it

aside." *Hecker v. Deere & Co.*, 556 F.3d 575, 591 (7th Cir. 2009). Whether to grant a motion to

reconsider is a matter squarely within the Court's discretion. *Caisse Nationale de Credit*

*Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996).

Rule 59(e) "essentially enables a district court to correct its own errors, sparing the

parties and the appellate courts the burden of unnecessary appellate proceedings." *Russell v.*

*Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995). A motion to alter or

amend a judgment pursuant to Rule 59(e) "is permissible when there is newly discovered

evidence or there has been a manifest error of law or fact." *Harrington v. City of Chi.*, 433 F.3d

542, 546 (7th Cir. 2006). A manifest error of law is the "disregard, misapplication, or failure to

recognize controlling precedent." *Oto v. Metro. Life Ins.*, 224 F.3d 601, 606 (7th Cir. 2000)

(quoting *Sedrak v. Callahan*, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)). "A 'manifest error' is

---

[3]  Federal Rule of Civil Procedure 59(e) was amended in 2009 to expand the period in which a
motion under the Rule must be filed from 10 days to 28 days. Fed. R. Civ. P. 59(e) Committee
Notes, 2009 Amendments.

not demonstrated by the disappointment of the losing party." *Id.* To succeed on a Rule 59(e)

motion, the movant must "'clearly establish' one of the aforementioned grounds for relief."

*Harrington*, 433 F.3d at 546 (quoting *Romo*, 250 F.3d at 1122 n.3).

## IV.  Sentencing Law

### A.  The Sentencing Reform Act of 1984 and the Anti-Drug Abuse Act of 1986

"For almost a century, the Federal Government employed in criminal cases a system of

indeterminate sentencing." *Mistretta v. United States*, 488 U.S. 361, 363 (1989).  Historically,

sentencing—"the function of determining the scope and extent of punishment"—was not

considered to be assigned by the Constitution to the "exclusive jurisdiction" of any of the three

Departments of the Federal Government.  *Id*. at 364.  Of course, Congress possesses the power to

establish the sentence for a federal crime.  *Id*. (citing *United States v. Wiltberger*, 18 U.S. (5

Wheat.) 76 (1820)).  Furthermore, the "scope of judicial discretion with respect to a sentence is

subject to congressional control."  *Id*. (citing *Ex parte United States*, 242 U.S. 27 (1916)).

"Congress early abandoned fixed-sentence rigidity, however, and put in place a system of ranges

within which the sentencer could choose the precise punishment."  *Id*.  "Congress delegated

almost unfettered discretion to the sentencing judge to determine what the sentence should be

within the customarily wide range so selected."  *Id*.  This broad discretion was heightened by the

power later given to sentencing judges to suspend a sentence and by the corresponding growth of

an elaborate system of probation.  *Id*.  With the introduction of parole, Congress moved

sentencing towards a "three-way sharing" of responsibilities by giving Executive Department

corrections personnel the discretion to release federal prisoners prior to the expiration of the

sentences that had been imposed by federal judges.  *Id*. at 364-65.  Thus, under this system of

indeterminate sentencing, "Congress defined the maximum, the judge imposed a sentence within

the statutory range (which he usually could replace with probation), and the Executive

[Department]'s parole official eventually determined the actual duration of imprisonment." *Id*. at

365. "Prior to 1984, the broad discretion of sentencing courts and parole officers had led to

significant sentencing disparities among similarly situated offenders." *Peugh v. United States*,—

– U.S.——, ——, 133 S. Ct. 2072, 2079 (2013).

In response, Congress enacted the Sentencing Reform Act of 1984 (the "SRA"), a chapter

of the Comprehensive Crime Control Act of 1984. Pub. L. 98-473, Title II, Ch. II, Oct. 12, 1984,

98 Stat. 1987, 18 U.S.C. § 3551 *et seq*. Through the SRA, Congress "sought to increase

transparency, uniformity, and proportionality in sentencing." *Dorsey v. United States*,—— U.S. –

——, ——, 132 S. Ct. 2321, 2326 (2012) (citing USSG § 1A1.3 (2011 ed.); 28 U.S.C.

§§ 991(b)(1), 994(f)). To meet these goals, "[t]he Act abandoned indeterminate sentencing and

parole in favor of a system in which Sentencing Guidelines, promulgated by a new Sentencing

Commission, would provide courts with a range of determinate sentences for categories of

offenses and defendants." *Tapia v. United States*,—— U.S. ——, ——, 131 S. Ct. 2382, 2387

(2011) (quoting *Mistretta*, 488 U.S. at 368) (internal quotation marks omitted); *see also Dillon*,

130 S. Ct. at 2687 ("The Sentencing Reform Act of 1984 . . . established the Sentencing

Commission and authorized it to promulgate Sentencing Guidelines and to issue policy

statements regarding the Guidelines' application.") (citing 28 U.S.C. §§ 991, 994(a)); *Neal v.

United States*, 516 U.S. 284, 290 (1996) ("The Commission was born of congressional

disenchantment with the vagaries of federal sentencing and of the parole system.") (citing

*Mistretta*, 488 U.S. at 366).

The SRA "directed the Commission to create in the Guidelines categories of offense

behavior (e.g., 'bank robbery/committed with a gun/ $2500 taken') and offender characteristics

(e.g., 'one prior conviction')." *Dorsey*, 132 S. Ct. at 2326. The Guidelines tell "the judge how to determine the applicable offense level and offender category, instruct the judge to apply the intersection's range in an ordinary case, but they leave the judge free to depart from that range in an unusual case." *Id*. at 2327.

"In 1986, Congress enacted a more specific, drug-related sentencing statute, the Anti-Drug Abuse Act" (the "ADAA"). *Dorsey*, 132 S. Ct. at. 2327 (citing Pub. L. 99-570, Oct. 27, 1986, 100 Stat. 3207). With the ADAA, "Congress adopted a 'market-oriented' approach to punishing drug trafficking, under which the total quantity of what is distributed, rather than the amount of pure drug involved, is used to determine the length of the sentence." *Chapman v. United States*, 500 U.S. 453, 461 (1991) (quoting H.R. Rep. No. 99-845, pt. 1, pp. 11-12, 17 (1986)). To implement the ADAA's approach to drug crimes, Congress set mandatory minimum sentences corresponding to the weight of a "mixture or substance containing a detectable amount of" the relevant controlled substances. 21 U.S.C. §§ 841(b)(1)(A)(i)-(viii) and (B)(i)-(viii); *see also Chapman*, 550 U.S. at 461. The ADAA, "like other federal sentencing statutes, interacts with the Guidelines in an important way. Like other sentencing statutes, it trumps the Guidelines. Thus, ordinarily no matter what the Guidelines provide, a judge cannot sentence an offender to a sentence beyond the maximum contained in the federal statute setting forth the crime of conviction. Similarly, ordinarily no matter what range the Guidelines set forth, a sentencing judge must sentence an offender to at least the minimum prison term set forth in a statutory mandatory minimum." *Dorsey*, 132 S. Ct. 2327. Although authorized by the SRA in 1984, by October 1986, when the ADAA took effect, the Commission had yet to promulgate the Guidelines. The first Guidelines eventually took effect on November 1, 1987. The Commission attempted "to accommodate and, to the extent possible, rationalize mandatory minimum

provisions established by the 1986 Anti-Drug Abuse Act" by anchoring the Guidelines to the mandatory minimum sentences. USSC, Special Report to Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System (Aug. 1991).

The 100-to-1 crack-to-cocaine disparity ratio originated in the ADAA. *See Kimbrough*, 552 U.S. at 95; *see also* 21 U.S.C. §§ 841(b)(1)(A)(iii) and (B)(iii) (2006 ed.). "Under the statute criminalizing the manufacture and distribution of crack cocaine . . . a drug trafficker dealing in crack cocaine [was] subject to the same sentence as one dealing in 100 times more powder cocaine." *Kimbrough*, 552 U.S. at 91. "Not surprisingly, the Sentencing Commission incorporated the [ADAA]'s mandatory minimums into the first version of the Guidelines themselves." *Dorsey*, 132 S. Ct. at 2327 (citing *Kimbrough*, 552 U.S. at 96-97); *see also DePierre v. United States*,—— U.S. ——, ——, 131 S. Ct. 2225, 2229-30 (2011) ("The Commission originally adopted the ADAA's 100-to-1 ratio for offenses involving 'cocaine' and 'cocaine base,' though instead of setting only two quantity thresholds, as the ADAA did, the Guidelines set sentences for the full range of possible drug quantities.") (quoting USSC, Special Report to the Congress: Cocaine and Federal Sentencing Policy 1 (Feb. 1995) ("1995 Report")) (internal quotation marks omitted). The Commission achieved this result "by setting a base offense level for a first-time drug offender that corresponded to the lowest Guidelines range above the applicable mandatory minimum." *Dorsey*, 132 S. Ct. at 2327 (citing USSC, Report to the Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System 53-54 (Oct. 2011)). "Under that framework, the Commission treated every gram of crack cocaine as the equivalent of 100 grams of powder cocaine." *Dillon*, 130 S. Ct. at 2688 (quoting *Kimbrough*, 552 U.S. at 96) (internal quotation marks omitted).

The SRA allows the Commission to promulgate amendments to the Guidelines and to make such amendments retroactive "for cases where the Guidelines become a cause of inequality, not a bulwark against it." *Freeman*, 131 S. Ct. at 2690; 28 U.S.C. §§ 994(p), (u). The SRA also directs the Commission to periodically review and revise the Guidelines. 28 U.S.C. § 994(o). When the Commission promulgates a revision that has the effect of reducing the Guidelines range for a given offense, the Commission must decide "in what circumstances and by what amount the sentences of prisoners serving terms of imprisonment for the offense may be reduced." 28 U.S.C. § 994(u).

As initially enacted by Congress, the SRA made the Guidelines mandatory and binding on district court judges. *Mistretta*, 488 U.S. at 367. Because the Guidelines were mandatory and binding on all judges, the Supreme Court "consistently held that the Guidelines [had] the force and effect of laws." *Booker*, 542 at 234 (Stevens, J., opinion of the Court in part—merits majority opinion) (citing *Mistretta*, 488 U.S. at 391; *Stinson v. United States*, 508 U.S. 36, 42 (1993)). Under this mandatory Guidelines regime, except for a limited number of circumstances, district judges were deprived of discretion to depart from the applicable Guidelines range in sentencing a criminal defendant. *See Burns v. United States*, 501 U.S. 129, 133 (1991), *abrogated on other grounds by Dillon*, 130 S. Ct. 2683 ("The only circumstance in which the district court can disregard the mechanical dictates of the Guidelines is when it finds 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission.'") (quoting 18 U.S.C. 3553(b)). In this era, the Guidelines permitted judges to impose sentences greater than those supported by the facts established by jury verdicts or guilty pleas. *See Booker*, 543 U.S. at 235 (Stevens, J., opinion of the Court in part—merits majority opinion) ("To reach [the defendant's] sentence, the judge

found facts beyond those found by the jury: namely, that [the defendant] possessed 566 grams of crack in addition to the 92.5 grams in his duffel bag. The jury never heard any evidence of the additional drug quantity, and the judge found it true by a preponderance of the evidence. Thus . . . the jury's verdict alone does not authorize the sentence.") (quoting *Blakely v. Washington*, 542 U.S. 296, 305 (2004)) (internal citation and quotation marks omitted).

**B.      *United States v. Booker***

In *Booker*, the Supreme Court held that the mandatory Guidelines regime created by the SRA was an unconstitutional violation of the Sixth Amendment right of criminal defendants to be tried by a jury and to have every element of an offense proved by the Government beyond a reasonable doubt. *Id.* at 243-44 ("Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt."). To cure the constitutional defect, the Court relegated the Guidelines to advisory status by invalidating two provisions of the SRA: 18 U.S.C. § 3553(b)(1) (2000 ed., Supp. IV), which directed sentencing courts to impose sentences within the applicable Guidelines range, and 18 U.S.C. § 3742(e) (2000 ed. and Supp. IV), which established the standard of review by which appellate courts were to review sentences imposed by the district courts, including *de novo* review of sentences departing from applicable Guidelines ranges. *Booker*, 543 U.S. at 258-59 (Breyer, J., opinion of the Court in part—remedial majority opinion). The Court, having severed these two provisions, held that "the remainder of the Act satisfies the Court's constitutional requirements." *Id.* at 259.

Thus, *Booker* left intact most provisions of the SRA, including those granting the Commission authority to revise the Guidelines pursuant to 28 U.S.C. § 994(o), and to determine

when and to what extent any revision would have retroactive effect pursuant to 28 U.S.C.

§ 994(u).  District courts are nevertheless still required to consult the Guidelines as "the starting

point and the initial benchmark" of any sentencing proceeding.  *Gall v. United States*, 552 U.S.

38, 49 (2007) ("[A] district court should begin all sentencing proceedings by correctly

calculating the applicable Guidelines range.  As a matter of administration and to secure

nationwide consistency, the Guidelines should be the starting point and the initial benchmark.")

(internal citation omitted); *see also Booker*, 543 U.S. at 259-60, 264 (Breyer, J., opinion of the

Court in part—remedial majority opinion) ("The district courts, while not bound to apply the

Guidelines, must consult those Guidelines and take them into account when sentencing") (citing

18 U.S.C. §§ 3553(a)(4), (5) (Supp. 2004)).

More recently, in *Kimbrough*, the Supreme Court held that "under *Booker*, the cocaine

Guidelines, like all other Guidelines, are advisory only."  552 U.S. at 91.  "Given all this, it

would not be an abuse of discretion for a district court to conclude when sentencing a particular

defendant that the crack/powder disparity yields a sentence 'greater than necessary' to achieve

§ 3553(a)'s purpose, even in a mine-run case."  *Id*. at 110.  In a later case clarifying the Court's

holding in *Kimbrough*, the Supreme Court explicitly stated that "district courts are entitled to

reject and vary categorically from the crack-cocaine Guidelines based on a policy disagreement

with those Guidelines."  *Spears v. United States*, 555 U.S. 261, 265-66 (2009) (*per curiam*).

## C.     Retroactive sentence reductions

Federal courts are generally forbidden to "modify a term of imprisonment once it has

been imposed."  18 U.S.C. § 3582(c); *see also Dillon*, 130 S. Ct. at 2687.  However, this "rule of

finality is subject to a few narrow exceptions."  *Freeman*, 131 S. Ct. at 2690 (plurality opinion).

Section 3582(c)(2) establishes one such exception to the general rule of finality and "empowers

district judges to correct sentences that depend on frameworks that later prove unjustified." *Id*.

The statute provides that

> in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o) . . . the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(2). The plain language of Section 3582(c)(2) provides for the "modif[ication of] a term of imprisonment" by granting courts the authority to "reduce" an otherwise final sentence in those instances specified by the Commission. 18 U.S.C. § 3582(c)(2); *see also* 28 U.S.C. § 994(u); *Mistretta*, 488 U.S. at 374. The statute does not authorize "sentencing" or "resentencing" proceedings. *Dillon*, 130 S. Ct. at 2690; *compare* 28 U.S.C. § 994(a)(2)(C) (referring to 18 U.S.C. § 3582(c)(2) as a "sentence modification provisio[n]"), *with* 18 U.S.C. § 3742(f) (authorizing the Courts of Appeals to remand a sentence "for further sentencing" upon a finding of error), *with* 18 U.S.C. § 3742(g) (prescribing the terms for district courts of "sentencing upon remand" and describing the proceeding as a "resentenc[ing]"). Thus, Congress intended 18 U.S.C. § 3582(c)(2) "to authorize only a limited adjustment to an otherwise final sentence and not a plenary resentencing proceeding." *Dillon*, 130 S. Ct. at 2691.

Federal sentencing law requires a district judge in every case to impose "a sentence sufficient, but not greater than necessary" to accomplish the goals of sentencing, including "to reflect the seriousness of the offense," "to promote respect for the law," "to provide just punishment for the offense," "to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a). The statute further provides that, in determining a proper sentence, the district court should consider a number of

factors, including "the nature and circumstances of the offense," "the history and characteristics of the defendant," "the sentencing range established" by the Guidelines, "any pertinent policy statement" promulgated by the Commission, and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *Id.*

In *Dillon*, 130 S. Ct. at 2691, the Supreme Court stated that Section 3582(c)(2) "establishes a two-step inquiry. A court must first determine that a reduction is consistent with § 1B1.10 before it may consider whether the authorized reduction is warranted, either in whole or in part, according to the factors set forth in § 3553(a)."

> At step one, § 3582(c)(2) requires the court to follow the Commission's instructions in § 1B1.10 to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized. Specifically, § 1B1.10(b)(1) requires the court to begin by determining the amended guideline range that would have been applicable to the defendant had the relevant amendment been in effect at the time of the initial sentencing. In making such determination, the court shall substitute only the amendments listed in subsection (c) for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected.
>
> * * *
>
> At step two of the inquiry, § 3582(c)(2) instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case. Because reference to § 3553(a) is appropriate only at the second step of this circumscribed inquiry, it cannot serve to transform the proceedings under § 3582(c)(2) into plenary resentencing proceedings.

*Id.* at 2691-92 (internal citations and quotation marks omitted). The Court in *Dillon* declared that "[a]ny reduction [to an otherwise final sentence] must be consistent with applicable policy statements issued by the Sentencing Commission." *Id.* at 2688; *see also* 18 U.S.C. § 3582(c)(2); *Freeman*, 131 S. Ct. at 2693 ("The binding policy statement governing § 3582(c)(2) motions places considerable limits on district court discretion."). The relevant policy statement

applicable to Section 3582(c)(2) motions is Section 1B1.10, which states that in a Section

3582(c)(2) proceeding, the court should substitute the amended Guidelines range and "leave all

other guideline application decisions unaffected." USSG § 1B1.10(b)(1) (2012 ed.). The Court

in *Dillon* held that "[e]xcept in limited circumstances, however, § 1B1.10(b)(2)(A) forecloses a

court acting under § 3582(c)(2) from reducing a sentence 'to a term that is less than the

minimum of the amended guideline range.'" 130 S. Ct. at 2688-89 (quoting USSG

§ 1B1.10(b)(2)(A) (2009 ed.)).

Thus, to be eligible for a sentence reduction pursuant to a Section 3582(c)(2) motion a

defendant must satisfy two conditions. First, he must have been sentenced "based on a

sentencing range that has subsequently been lowered by the Sentencing Commission." 18

U.S.C. § 3582(c)(2). Second, any reduction must be consistent with Section 1B1.10, which

provides that the relevant Guidelines amendment must "have the effect of lowering the

defendant's applicable guideline range." USSG § 1B1.10(a)(2)(B) (2012 ed.).

## D.      The Fair Sentencing Act and Guidelines Amendment 750

Over the course of the two decades following the enactment of the ADAA, the

Commission forcefully criticized Congress's decision to set the crack-to-cocaine mandatory

minimum ratio at 100-to-1, and attempted to reduce the ratio a number of times. In 1995, the

Commission proposed amendments to the Guidelines that would have eliminated the 100-to-1

crack-to-cocaine disparity and replaced it with a ratio of 1-to-1. *See* Amendments to the

Sentencing Guidelines for United States Courts, 60 Fed. Reg. 25075-77 (1995). However

Congress, acting pursuant to its authority under 28 U.S.C. § 994(p), disapproved the

amendments.[4]  Pub. L. 104-38, § 1, Oct. 30, 1995, 109 Stat. 334.  Nevertheless, Congress

directed the Commission to "propose revision of the drug quantity ratio of crack cocaine to

powder cocaine under the relevant statutes and guidelines."  Pub. L. 104-38, § 2(a)(2), Oct. 30,

1995, 109 Stat. 335.

Pursuant to Congress's directive, the Commission issued reports in 1995, 1997, 2002, and

2007, which recommended that Congress change what the Commission believed was an overly

high and unjustified crack-to-cocaine ratio prescribed by the ADAA, "because, for example,

research showed the relative harm between crack and powder cocaine less severe than 100-to-1,

because sentences embodying that ratio could not achieve the Sentencing Reform Act's

'uniformity' goal of treating like offenders alike, because they could not achieve the

'proportionality' goal of treating different offenders (e.g., major drug traffickers and low-level

dealers) differently, and because the public had come to understand sentences embodying the

100-to-1 ratio as reflecting unjustified race-based differences."  *Dorsey*, 132 S. Ct. at 2327

(citing *Kimbrough*, 552 U.S. at 97-98); *see, e.g.*, 1995 Report at 197-98; USSC, Special Report

to Congress: Cocaine and Federal Sentencing Policy 8 (Apr. 1997) ("1997 Report"); USSC,

Report to Congress: Cocaine and Federal Sentencing Policy 91, 103 (May 2002) ("2002

---

[4]  28 U.S.C. § 994(p) states:

> The Commission, at or after the beginning of a regular session of Congress, but
> not later than the first day of May, may promulgate under subsection (a) of this
> section and submit to Congress amendments to the guidelines and modifications
> to previously submitted amendments that have not taken effect, including
> modifications to the effective dates of such amendments. Such an amendment or
> modification shall be accompanied by a statement of the reasons therefor and
> shall take effect on a date specified by the Commission, which shall be no earlier
> than 180 days after being so submitted and no later than the first day of November
> of the calendar year in which the amendment or modification is submitted, except
> to the extent that the effective date is revised or the amendment is otherwise
> modified or disapproved by Act of Congress

Report"); USSC, Report to Congress: Cocaine and Federal Sentencing Policy 8 (May 2007) ("2007 Report"). In each Report, the Commission appealed to Congress for new legislation with a lower crack-to-cocaine ratio. *See, e.g.*, 1995 Report at 198-200; 1997 Report at 9-10; 2002 Report at 103-07; 2007 Report at 6-9.

Congress finally accepted the Commission's recommendations to enact new legislation embodying a lower crack-to-cocaine ratio, s*ee* 2002 Report at 104; 2007 Report at 8-9 & n.26, and enacted the Fair Sentencing Act of 2010 (the "FSA"). Pub. L. 111-220, Aug. 3, 2010, 124 Stat. 2372. On August 3, 2010, President Obama signed the FSA into law. *See* Statement by the Press Secretary on H.R. 4861, H.R. 5051, H.R. 5099, and S. 1789, 2010 WL 3017057 (White House), at *1 (Aug. 3, 2010) ("On Tuesday, August 3, 2010, the President signed into law: . . . S. 1789, the 'Fair Sentencing Act of 2010.'"). The FSA alters the statutory penalties applicable to crack cocaine offenses. *See* 21 U.S.C. § 841 (2010). Congress's intent in passing the FSA was to reduce the disparity between prison sentences for cocaine offenders and crack offenders. *See Dorsey*, 132 S. Ct. at 2326-29; *see also* 155 Cong. Rec. S10488-01 (statement of Sen. Durbin, for himself and Sens. Leahy, Specter, Feingold, Cardin, Whitehouse, Kaufman, Franken, Dodd, Kerry, and Levin) ("This narrowly tailored bill would eliminate the sentencing disparity that exists in the United States between crack cocaine and powder cocaine."). The FSA reduces the 100-to-1 crack-to-cocaine disparity ratio found in the SRA to a ratio of 18-to-1. *See* 124 Stat. 2372 § 2(a); *Dorsey*, 132 S. Ct. at 2326. Specifically, the FSA amends 21 U.S.C. § 841(b)—the penalty provision of 21 U.S.C. § 841. *See* 124 Stat. 2372 § 2(a).

The FSA directed the Commission to promulgate amendments to the Guidelines reflecting the changes embodied in the FSA. 124 Stat. 2372–2375. In response to the FSA, the Commission issued Amendment 750, which lowered the offense levels in Guidelines Section

2D1.1 for various quantities of crack cocaine.  USSG, App. C, Amend. 748 (2010) (temporary emergency Guidelines Amendment reducing the ratio); Amend. 750 (2011) (making Amendment 749 permanent).  The Commission voted to give Parts A and C of Amendment 750 retroactive effect.  USSG, App. C, Amend. 750 (2011).  Promulgated contemporaneously with Amendment 750, Amendment 759 has the effect of including Parts A and C of Amendment 750 among the Guidelines amendments that may be applied retroactively.  USSG § 1B1.10(c); USSG, App. C, Amdt. 759 (2011).

## V.      The February 14, 2013 sentence reduction

On February 14, 2013, the Court granted King's Section 3582(c)(2) motion and reduced his sentence to 170 months incarceration.  (R. 951, Order.)  Applying the *Dillon* framework, the Court first ascertained the amended Guidelines range that would have been in effect at the time of King's sentencing.  Had the current Guidelines been in effect in 2008, when King was resentenced, he would have had a base offense level, based on "at least 1.5 kilograms" of crack, of 34, for an adjusted offense level of 36 after the two-level upward adjustment for obstruction of justice.  *See* USSG § 2D1.1(c)(3) (2012 ed.); USSG § 3C1.1 (2012 ed.).  With a Criminal History Category of III, this produced an amended Guidelines range of 235 to 293 months incarceration.  *See* USSG ch. 5, pt. A, Sentencing Table (2012 ed.).

The Court chose to exercise its broad grant of discretion and found, based on the amended Guidelines range, that a sentence of 170 months incarceration was appropriate— sufficient, but not greater than necessary to satisfy the purposes of sentencing.  *See* 18 U.S.C. § 3553(a).  The Court noted that the retroactive reduction in King's sentence came about as a result of a major and protracted effort by courts and the Commission to remediate a law that has had an unjust and racially discriminatory impact on the sentences imposed on thousands of

defendants. *See Dorsey*, 132 S. Ct. at 2328-29. Indeed, the parity that the President, Attorney General, and many commentators seek has yet to be achieved. *See, e.g.*, Mem. for all Federal Prosecutors, Regarding Dep't Policies and Procedures Concerning Sentencing for Crack Cocaine Offenses, David W. Ogden, Deputy Att'y Gen., U.S. Dep't of Justice (May 1, 2009) ("The President and Attorney General believe Congress should eliminate the sentencing disparity between crack cocaine and powder cocaine."). The reduction produced by the FSA and Amendment 750 is a nascent solution, moving the crack-to-cocaine disparity from a ratio of 100-to-1 to a ratio of 18-to-1.

Despite the Government's assertions, the Court concluded that King was not the head of this drug ring and was at best a middle manager who had been adequately punished by serving a significant sentence of 170 months incarceration. In addition, King used his time in custody productively by successfully completing a number of training and education courses. The Court exercised its discretion to depart from the low-end of the amended Guidelines range in imposing King's reduced sentence pursuant to Section 3582(c)(2). After applying step two of the *Dillon* framework by evaluating the Section 3553(a) factors as they applied to King, the Court concluded that the reduction authorized at step one of *Dillon* was warranted in whole. Therefore, the Court ordered King's sentence to be reduced to a term of 170 months imprisonment, plus a term of five years of supervised release. The Court instructed that all other aspects of King's sentence were to remain the same.

## VI.    Analysis

The Government argues that this Court committed a manifest error of law by reducing King's sentence to 170 months incarceration because a prison term of 170 months is below the low-end of the amended Guidelines range and is therefore impermissible under the limitation in

Section 1B1.10(b)(2)(A). (R. 953, Gov.'s Emerg. Mot. at 2-3; R. 959, Gov.'s Resp. at 9.) King, on the other hand, argues that application of Section 1B1.10(b)(2)(A) to his Section 3582(c)(2) motion violates the *Ex Post Facto* Clause of the United States Constitution. (R. 967, Def.'s Resp. at 5-6); U.S. Const. art. I, § 9, cl. 3. The Government replies that in this case "[t]here is no *ex post facto* clause issue." (R. 968-1, Gov.'s Sur-Reply at 4.) The Court disagrees.

## A.       Section 1B1.10

King argues that the Government seeks to apply Section 1B1.10(b)(2)(A), a more recent and more punitive policy statement of the Guidelines, to his offenses committed several years ago. (R. 967, Def.'s Resp. at 5.) In *Dillon*, the Supreme Court held that the policy statement in Section 1B1.10(b) *is mandatory and binding*, not advisory. 130 S. Ct. at 2687. Subsection (b)(2)(A) of that policy statement "confines the extent of the reduction authorized" and "[Section] 3582(c)(2) *requires* the court to follow the Commission's instructions in § 1B1.10 to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." *Id.* at 2691 (emphasis supplied). Justice Stevens, vigorously dissenting from the majority opinion in *Dillon*, stated

> Today, the Court holds that in this one limited nook of sentencing law, the Commission retains the power to bind judges that we struck down in *Booker*. In my view, the Court's decision to treat the Commission's policy statement as a mandatory command rather than an advisory recommendation is unfaithful to *Booker*. It is also on dubious constitutional footing, as it permits the Commission to exercise a barely constrained form of lawmaking authority.
>                                                 * * *
> Prior to our decision in *Booker*, the Guidelines were mandatory only by virtue of congressional mandate, and not by virtue of Commission decree. Following *Booker*, the Commission's policy statement in § 1B1.10 took effect in March 2008. That statement . . . is now the only source of binding authority in § 3582(c)(2) proceedings, as it purports to have the effect of reinstating a mandatory Guidelines regime within the context of a sentence modification proceeding. It is now the Commission's *policy statement,* and not an explicit congressional mandate, that makes the Guidelines ranges binding under § 3582(c)(2).

130 S. Ct. at 2695-96 (Stevens, J., dissenting) (internal citations omitted). Justice Stevens described the Commission's power to promulgate policy statements such as Section 1B1.10 as "the tiniest sliver of lawmaking power to tie the hands of a district court's exercise of grace under § 3582(c)(2)." *Id*. at 2700.

When King was resentenced in 2008, the only floor imposed by Section 1B1.10 on the reduction that a judge could grant in a Section 3582(c)(2) proceeding was time served. *See* USSG § 1B1.10(b) (2000 ed.). The 2000 version of Section 1B1.10 provided that:

> In determining whether, and to what extent, a reduction in the term of imprisonment is warranted for a defendant eligible for consideration under 18 U.S.C. § 3582(c)(2), the court should consider the term of imprisonment that it would have imposed had the amendment(s) to the guidelines listed in subsection (c) been in effect at the time the defendant was sentenced, *except that in no event may the reduced term of imprisonment be less than the term of imprisonment the defendant has already served.*

USSG § 1B1.10(b) (2000 ed.) (emphasis supplied); *see also* USSG § 1B1.10, cmt. n. 3 (2000 ed.) ("[T]he sentencing court has the discretion to determine whether, and to what extent, to reduce a term of imprisonment under this section."). Amendment 712 to the Guidelines, which was promulgated in 2007 and made retroactively effective on March 3, 2008, altered Section 1B1.10 by adding, *inter alia*, Subsection (b)(2), which provided generally that a court "shall not" reduce a defendant's sentence "to a term that is less than the minimum of the amended guideline range[.]" USSG, Supp. App. C, Amdt. 712 (2008); USSG § 1B1.10(b)(2)(A) (2008 ed.). It also contained an exception to that general rule:

> If the original term of imprisonment imposed was less than the term of imprisonment provided by the guideline range applicable to the defendant at the time of sentencing, a reduction comparably less than the amended guideline range determined under subdivision (1) of this subsection may be appropriate. However, if the original term of imprisonment constituted a non-guideline sentence determined pursuant to 18 U.S.C. § 3553(a) and *United States v. Booker*, 543 U.S. 220 (2005), a further reduction generally would not be appropriate.

USSG § 1B1.10(b)(2) (2008 ed.).

With the adoption of Amendments 750 and 759 Section 1B1.10 was again revised. USSG, App. C, Amdts. 750, 759 (2011). The version of Section 1B1.10 currently in effect provides generally that a court "shall not reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) and this policy statement to a term that is *less than the minimum of the amended guideline range* determined under subdivision (1) of this subsection." USSG § 1B1.10(b)(2)(A) (2012 ed.) (emphasis supplied). The exception to this general rule now provides that:

> If the term of imprisonment imposed was less than the term of imprisonment provided by the guideline range applicable to the defendant at the time of sentencing *pursuant to a government motion to reflect the defendant's substantial assistance to authorities*, a reduction comparably less than the amended guideline range determined under subdivision (1) of this subsection may be appropriate.

USSG § 1B1.10(b)(2)(B) (emphasis supplied). The current version of Section 1B1.10 also provides that "[i]n *no event* may the reduced term of imprisonment be less than the term of imprisonment the defendant has already served." USSG § 1B1.10(b)(2)(C) (2012 ed.) (emphasis supplied).

In addition, Amendment 759 added Application Note 6 to the commentary to Section 1B1.10, which instructs that "the court shall use the version of this policy statement that is in effect on the date on which the court reduces the defendant's term of imprisonment as provided by 18 U.S.C. § 3582(c)(2)." USSG § 1B1.10, cmt. n. 6 (2012 ed.). Prior to the adoption of Amendment 759 in 2011, Section 1B1.10 did not indicate which version of the policy statement a court was to use during a Section 3582(c)(2) sentence reduction. *Compare* USSG § 1B1.10 (2012 ed.), *with* USSG § 1B1.10 (2000 ed.). Section 1B1.10(b) only specified that "the court should consider the term of imprisonment that it would have imposed had the amendment(s) to

26

the guidelines listed in subsection (c) been in effect at the time the defendant was sentenced . . ." USSG § 1B1.10(b) (2000 ed.). The "Background" commentary to Section 1B1.10 was also altered in 2011 to include the following language: "The Supreme Court has concluded that proceedings under section 3582(c)(2) are not governed by *United States v. Booker*, 543 U.S. 220 (2005), and this policy statement remains binding on courts in such proceedings. *See Dillon v. United States*, 130 S. Ct. 2683 (2010)." USSG 1B1.10, cmt. Background (2011 ed.). The Supreme Court has held that "commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson*, 508 U.S. at 38. *Stinson* was decided before *Booker* consigned the Guidelines to advisory status, but the Seventh Circuit has made clear that the holding of *Stinson* survives *Booker* and is not in conflict with the advisory sentencing regime established by *Booker. See, e.g.*, *United States v. Katalinic*, 510 F.3d 744, 746 (7th Cir. 2007) (quoting *Stinson*, 508 U.S. at 38).

When it adopted Amendments 750 and 759, the Commission also eliminated portions of Section 1B1.10. USSG § 1B1.10(c) (2011 ed.); USSG, App. C, Amdts. 750, 759 (2011). Prior to the adoption of Amendment 759 in 2011, the Guidelines recognized an exception to Section 1B1.10(b)(2)(A) whenever "the original term of imprisonment imposed was less than the term of imprisonment provided by the guideline range applicable to the defendant at the time of sentencing." USSG § 1B1.10(b)(2)(B) (2010 ed.). In cases to which this exception applied, Section 1B1.10(b)(2)(B) allowed the district court to grant "a reduction comparably less than the amended guideline range." *Id.* With the adoption of Amendment 759, the Commission narrowed the scope of the exception found in Section 1B1.10(b)(2)(B), making it applicable only to a defendant who had initially received a below Guidelines sentence "pursuant to a government

motion to reflect the defendant's substantial assistance to authorities[.]" USSG
§ 1B1.10(b)(2)(B) (2011 ed.); USSG, App. C, Amend. 759 (2011). Thus, the Commission
removed the "comparable" reduction aspect of pre-2011 versions of Section 1B1.10(b)(2)(B).

Prior to 2011, courts adjudicating Section 3582(c)(2) motions could have used the
Guidelines in effect at the time of the reduction to determine and substitute the adjusted
Guidelines offense level that would have been applicable to a given defendant had an
amendment been in effect at the time of sentencing and, most importantly, apply the Guidelines
in effect at the initial sentencing for all other purposes. *See* USSG § 1B1.10(b) (2007 ed.);
USSG § 1B1.10, cmt. n. 2 (2007 ed.) ("In determining the amended guideline range under
subsection (b), the court shall substitute only the amendments listed in subsection (c) for the
corresponding guideline provisions that were applied when the defendant was sentenced. All
other guideline application decisions remain unaffected."); *see, e.g.*, *United States v. Neal*, 611
F.3d 399, 401 (7th Cir. 2010) ("A judge is entitled to take as given the Guideline calculation
made at sentencing, adjusting that calculation only for the retroactive changes.") (citing USSG
§ 1B1.10(b)(1)).

Though the Court seeks to exercise its *Booker* discretion to reduce King's sentence to 170
months incarceration, the current policy statement at Section 1B1.10(b)(2)(A) forbids the Court
from doing so by mandating that "the court shall not reduce the defendant's term of
imprisonment under 18 U.S.C. § 3582(c)(2) and this policy statement *to a term that is less than
the minimum of the amended guideline range*[.]" USSG § 1B1.10(b)(2)(A) (2012 ed.) (emphasis
supplied). Had King's sentence reduction occurred under any version of Section 1B1.10 in
effect before the Commission's 2008 overhaul of Section 1B1.10 and before Amendment 759
added Application Note 6 to the commentary to Section 1B1.10, the Court could have exercised

its discretion to reduce King's sentence to 170 months incarceration. *See Dillon*, 130 S. Ct. at 2702 (Stevens, J., dissenting); *United States v. Colon*, 707 F.3d 1255, 1258 (11th Cir. 2013) ("The Commission also issued Amendment 759, which revised U.S.S.G. § 1B1.10, the policy statement governing motions for sentence reductions under 18 U.S.C. § 3582(c)(2). Before Amendment 759, *a district court had discretion to lower a defendant's sentence below the amended guidelines range* subject to some restrictions. . . . Amendment 759 further restricted a district court's discretion to make that kind of reduction.") (citing USSG, App. C, Amend. 759 (2011)) (emphasis supplied); *United States v. Berberena*, 694 F.3d 514, 525 (3d Cir. 2012) ("The Commission's revision of § 1B1.10(b) did, admittedly, constrain the ability of courts entertaining § 3582(c)(2) motions to reduce sentences."); *United States v. Glover*, 686 F.3d 1203, 1207 (11th Cir. 2012) ("Before Amendment 759, an exception to [the] limitation [in Section 1B1.10(b)(2)(A)] allowed a district court to lower a defendant's prison sentence below the amended guidelines range if the original sentence was, for any reason, below the original guidelines range. After Amendment 759, however, a district court may lower a defendant's sentence below the amended guidelines range only if the original sentence was below the original guidelines range because the defendant provided substantial assistance to the government. . . . Amendment 759 did nothing more than limit a district court's authority to reduce a defendant's sentence below the amended guidelines range.") (internal citations omitted); *United States v. Ivory*, 388 F. App'x 567, 568-69 (8th Cir. 2010) ("The district court's authority to reduce a defendant's sentence is constrained by the limiting provisions of § 3582(c)(2) and the restrictions established in § 1B1.10(b)(2)(A).") (quoting *United States v. Wagner*, 563 F.3d 680, 682 (8th Cir. 2009)) (internal quotation marks omitted). Under pre-2008 versions of Section 1B1.10, the Court's discretion to depart from the low-end of the amended

Guidelines sentencing range in imposing a reduced sentence was essentially unfettered. By contrast, under the Guidelines now in effect, the Court's discretion is substantially limited, and by virtue of Section 1B1.10(b)(2)(A)—which the Court in *Dillon* held to be mandatory and binding on district judges—the Court cannot sentence King to a reduced term of imprisonment below 235 months (the new low-end of the amended Guidelines range applicable to him). Furthermore, Application Note 6 to the commentary to Section 1B1.10 requires the Court to apply the version of Section 1B1.10 in effect when a defendant's sentence is reduced. USSG 1B1.10, cmt. n.6 (2012 ed.). In other words, Section 1B1.10(b)(2)(A) mandates that the Court impose a term of imprisonment that is 60 months greater than the level the Court deems sufficient under Section 3553(a) and 60 months greater than the term of imprisonment that the Court could have sentenced King to under prior versions of Section 1B1.10. In so doing, Section 1B1.10(b)(2)(A) eliminates a large degree of discretion that federal district courts are thought to have in sentencing. *See, e.g.*, *Apprendi v. New Jersey*, 530 U.S. 466, 481 (2000) ("We have often noted that judges in this country have long exercised discretion of this nature in imposing sentence *within statutory limits* in the individual case.") (emphasis in original); *Koon v. United States*, 518 U.S. 81, 98 (1996) ("A district court's decision to depart from the Guidelines . . . will in most cases be due substantial deference, for it *embodies the traditional exercise of discretion by a sentencing court*.") (emphasis supplied); *United States v. Bullion*, 466 F.3d 574, 575 (7th Cir. 2006) ("But the standard of reasonableness, introduced by the *Booker* decision, confers broad sentencing discretion. The judge must consider the guidelines but is in no sense bound by them. He is bound only by the statutory sentencing factors, 18 U.S.C. § 3553(a), which are both numerous and vague, thus giving the judge a great deal of running room.") (citing *DeMaree*, 459 F.3d at 795; *United States v. Walker*, 447 F.3d 999, 1007 (7th Cir. 2006)). In light of the

Supreme Court's decision in *Peugh*, 133 S. Ct. 2072, which was issued on June 10, 2013, Section 1B1.10 now raises the specter of an *ex post facto* violation.

### B.    The *Ex Post Facto* Clause

This is a case of first impression in this Circuit since the Supreme Court issued its decision in *Peugh*.  Prior to *Peugh*, the law of this Circuit held that there was no *ex post facto* violation when a defendant is sentenced under Guidelines promulgated after the defendant committed his crime and the new version of the Guidelines apply a higher applicable advisory range than the version of the Guidelines in effect at the time of the crime would have.  *United States v. DeMaree*, 459 F.3d 791, 795 (7th Cir. 2006), *overruled by Peugh*, 133 S. Ct. at 2079. The Seventh Circuit held that this was so because "the *ex post facto* clause should apply only to laws and regulations that bind rather than advise."  *Id*.  *DeMaree* was reaffirmed by the Seventh Circuit several times after it was first decided.  *See, e.g.*, *United States v. Holcomb*, 657 F.3d 445, 448-49 (7th Cir. 2011); *United States v. Favara*, 615 F.3d 824, 829 (7th Cir. 2010); *United States v. Panice*, 598 F.3d 426, 435 (7th Cir. 2010); *United States v. Nurek*, 578 F.3d 618, 625-26 (7th Cir. 2009).

In *United States v. Robertson*, a post-*Booker* opinion, the Seventh Circuit "acknowledge[d] that even though the Sentencing Guidelines are now advisory, several other circuits have found that the Guidelines still play a powerful 'anchoring' role in determining a defendant's ultimate sentence and thus have held that use of later, more severe Guidelines still creates an ex post facto problem."  662 F.3d 871, 876 (7th Cir. 2011) (citing *United States v. Wetherald*, 636 F.3d 1315, 1322 (11th Cir. 2011); *United States v. Ortiz*, 621 F.3d 82, 87 (2d Cir. 2010); *United States v. Lewis*, 606 F.3d 193, 199 (4th Cir. 2010); *United States v. Lanham*, 617 F.3d 873, 889-90 (6th Cir. 2010); *United States v. Turner*, 548 F.3d 1094, 1099-1100 (D.C. Cir.

2008)).  However, the Seventh Circuit declined to follow these other circuits and refused to

overrule *DeMaree*.  *Id.*

The Seventh Circuit has "ruled that in light of the now-advisory nature of the guidelines,

using the guidelines in effect on the date of sentencing does not violate the *ex post facto* clause. .

. . [but i]f our decision in *DeMaree* were incorrect, the consequence would be to use the

guidelines in effect on the date of the offense, rather than on the date of sentencing."  *United

States v. Medina*, 695 F.3d 702, 705 (7th Cir. 2012).  Furthermore, the Seventh Circuit has held

that "the Commission's policy statements should for all intents and purposes be viewed as part of

the statute.  The policy statements make clear that section 3582(c)(2) proceedings are not full

resentencings and may not result in a sentence lower than the amended guideline range. . . . This

limitation of the district court's power is not constitutionally suspect."  *United States v.

Cunningham*, 554 F.3d 703, 708 (7th Cir. 2009) (citing USSG § 1B1.10(a)(3); 1B1.10(b)(2)(A)).

The Unites States Constitution forbids the federal government from enacting any "*ex post

facto* Law."  U.S. Const. art I, § 9, cl. 3; *see Calder v. Bull*, 3 U.S. (3 Dall.) 386, 389 (1798)

(opinion of Chase, J.).  "Although the Latin phrase '*ex post facto*' literally encompasses any law

passed 'after the fact,' it has long been recognized by [the Supreme] Court that the constitutional

prohibition on *ex post facto* laws applies only to penal statutes which disadvantage the offender

affected by them.  As early opinions [of the Supreme] Court explained, '*ex post facto* law' was a

term of art with an established meaning at the time of the framing of the Constitution."  *Collins

v. Youngblood*, 497 U.S. 37, 41 (1990) (citing *Calder*, 3 U.S. at 390-92 (opinion of Chase, J.); *id.*

at 396 (opinion of Paterson, J.); *id.* at 400 (opinion of Iredell, J.); *Miller v. Florida*, 482 U.S. 423,

430 (1987)) (internal citations omitted).

The seminal opinion of Justice Chase in *Calder* therefore explained what "is to be considered an *ex post facto* law, within the words and meaning of the prohibition in the Federal Constitution." 3 U.S. at 390. He catalogued them as follows:

> 1st. Every law that makes an action, done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2nd. Every law that aggravates a crime, or makes it greater than it was, when committed. 3rd. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender.

*Id.*

This formulation of what constitutes an *ex post facto* law has been repeatedly endorsed by the Supreme Court. *See, e.g.*, *Carmell v. Texas*, 529 U.S. 513, 521 (2000); *Lynce v. Mathis*, 519 U.S. 433, 441 n. 13 (1997); *Dobbert v. Florida*, 432 U.S. 282, 293; *Malloy v. South Carolina*, 237 U.S. 180, 183-84 (1915); *Mallett v. North Carolina*, 181 U.S. 589, 593-94 (1901). "Building on Justice Chase's formulation of what constitutes an '*ex post facto* Law,' [the Supreme Court has] not attempted to precisely delimit the scope of this Latin phrase, but [has] instead given it substance by an accretion of case law." *Peugh*, 133 S. Ct. at 2081 (quoting *Dobbert*, 432 U.S. at 292) (internal quotation marks omitted).

The Supreme Court has rejected the proposition that a law must increase the maximum sentence that a defendant might be sentenced to in order to violate the *Ex Post Facto* Clause. *See Lindsey v. Washington*, 301 U.S. 397 (1937). That the sentencing authority possesses some degree of discretion will also not defeat the finding of an *Ex Post Facto* Clause violation. *See Garner v. Jones*, 529 U.S. 244, 253 (2000); *see also Peugh*, 133 S. Ct. at 2086 (citing *Lindsey*, 301 U.S. at 402) (Noting that precedents of the Supreme Court "firmly establish that changes in law need not bind a sentencing authority in order to violate the *Ex Post Facto* Clause."). In

addition, the *Ex Post Facto* Clause covers actions beyond those that are purely legislative and includes regulatory acts, such as promulgating Guidelines amendments and policy statements. *Id*. at 257 (changes to a parole board's rules could be an *ex post facto* violation); *Peugh*, 133 S. Ct. at 2088.

The Supreme Court has invalidated laws based on the *Ex Post Facto* Clause where the law at issue either eliminated or limited a potential for freedom that had previously been available. *See, e.g.*, *Lynce v. Mathis*, 519 U.S. 433, 435 (1997) (finding an *ex post facto* violation where the statute at issue eliminated early-release credits for prison inmates); *Miller*, 482 U.S. at 424-27 (finding an *ex post facto* violation where the statute increased the presumptive sentencing range from which sentencing courts had little discretion to depart); *Weaver v. Graham*, 450 U.S. 25, 25, 36 (1981) (finding an *ex post facto* violation where the statute limited the availability of good-conduct credits for inmates); *Lindsey*, 301 U.S. at 398-402 (finding an *ex post facto* violation where the statute replaced a discretionary 0-to-15 years term of imprisonment with a mandatory 15 years term).

As the Court noted in *Weaver*, "[t]he *ex post facto* prohibition forbids the Congress and the States to enact any law which imposes a punishment for an act which was not punishable at the time it was committed; *or imposes additional punishment to that then prescribed*." 450 U.S. at 28 (quoting *Cummings v. Missouri*, 71 U.S. (4 Wall.) 277, 325-26 (1867)) (internal quotation marks omitted) (emphasis supplied). Furthermore, the Court held that when a "determinant" of a defendant's "prison term" is changed and the change produces an alteration in the prisoner's "effective sentence," the "determinant" is considered retrospective and can be deemed an *ex post facto* law. *Id*. at 32 (citing *Lindsey*, 301 U.S. at 401-02). Section 1B1.10(b)(2)(A) is exactly such a determinant. Furthermore, the Supreme Court has "previously recognized that a

prisoner's eligibility for *reduced imprisonment* is a significant factor entering into both the defendant's decision to plea bargain and the judge's calculation of the sentence to be imposed." *Id*. (citing *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974); *Warden v. Marrero*, 417 U.S. 653, 658 (1974)) (emphasis supplied). Likewise, in *Lindsey* the Court held that "an increase in the possible penalty is ex post facto, regardless of the length of the sentence actually imposed, *since the measure of punishment prescribed by the later statute is more severe than that of the earlier*." 301 U.S. at 401 (internal citations omitted) (emphasis supplied).

In *Miller*, 482 U.S. at 430, the Supreme Court held that two critical elements must be present before a violation of the *Ex Post Facto* Clause may be deemed to have occurred. "[F]irst, the law must be retrospective, that is, it must apply to events occurring before its enactment; and second, it must disadvantage the offender affected by it." *Id*. (quoting *Weaver*, 450 U.S. at 29) (internal quotation marks omitted). The "touchstone" of the inquiry into whether the *Ex Post Facto* Clause has been violated is "whether a given change in law presents a sufficient risk of increasing the measure of punishment attached to the covered crimes." *Peugh*, 133 S. Ct. at 2082 (quoting *Garner*, 529 U.S. at 250) (internal quotation marks omitted). Whether a change in the law creates such a risk is "a matter of degree"; the inquiry cannot be narrowed to a "single formula." *Id*. (quoting *Cal. Dep't of Corrs. v. Morales*, 514 U.S. 499, 509 (1995)) (internal quotation marks omitted).

C.      **Whether Section 1B1.10(b)(2)(A) violates the *Ex Post Facto* Clause**

At issue in this case is Justice Chase's third category of *ex post facto* laws: those "that change[ ] the punishment, and inflict[ ] a greater punishment, than the law annexed to the crime, when committed." *Calder*, 3 U.S. at 390 (opinion of Chase, J.). The Supreme Court has described the ban on application of such laws as going to "[t]he heart of the *Ex Post Facto*

Clause." *Johnson v. United States*, 529 U.S. 694, 699 (2000) (citing *Calder*, 3 U.S. at 390).

King claims that the *Ex Post Facto* Clause was violated here because Section 1B1.10(b)(2)(A) of the 2012 Guidelines, which governs his sentence reduction pursuant to Application Note 6 of the commentary to that Section, increases the applicable amended Guidelines sentencing range that he may be entitled to when compared with the Guidelines in effect in 2008, when he was resentenced, and those in effect prior to 2000, when he committed his crimes. Thus, King argues that Section 1B1.10(b)(2)(A) is a constitutionally infirm *ex post facto* law.

As courts have acknowledged, "[b]ecause Policy Statements, among other functions, interpret Guidelines, it is not surprising that they will, at times, affect the length of sentences. In fact, the Supreme Court has expressly held that Policy Statements may authoritatively determine the application of a particular Guideline, even where it affects the length of the defendant's sentence." *United States v. Fox*, 631 F.3d 1128, 1132 (9th Cir. 2011) (citing *Williams v. United States*, 503 U.S. 193, 201 (1992)). In *Williams* the Court stated that when "a policy statement prohibits a district court from taking a specified action, the statement is an authoritative guide to the meaning of the applicable Guideline." 503 U.S. at 201. Justice Steven identified the problem at issue in this case in his dissent in *Dillon*, noting that prior to "the Commission's 2008 overhaul of its policy statement in § 1B1.10," an eligible defendant would not have been precluded from obtaining a "discretionary sentence" reduction. *Dillon*, 130 S. Ct. at 2702 (Stevens, J., dissenting). "Standing in [a defendant's] way presently are two provisions of § 1B1.10, revised contemporaneously with the Commission's decision to make its amendments to the crack cocaine offense Guidelines retroactive." *Id*.

As the "Background" commentary to Section 1B1.10 explains "[t]his policy statement provides guidance and *limitations* for a court when considering a motion under 18 U.S.C.

§ 3582(c)(2)." USSG § 1B1.10, cmt. Background (2012 ed.). Likewise, the "Reason for Amendment" issued by the Commission states that "[t]he amendment modifies subsection (b) to clarify *the limitations on the extent to which a court may reduce the defendant's term of imprisonment* under 18 U.S.C. § 3582(c)(2) and § 1B1.10." USSG, Supp. App. C, Amdt. 712 (Reason for Amendment) (2008). The Court's description of the effect of the Guidelines in *Peugh* applies with equal force here: "the purpose and effect of the change in the Guidelines calculation [is] to increase the rates and length of incarceration." 133 S. Ct. at 2085 (quoting *Miller*, 482 U.S. at 431) (internal alterations and quotation marks omitted). Such "a retrospective increase in the Guidelines range applicable to a defendant creates a sufficient risk of a higher sentence to constitute an *ex post facto* violation." *Id.*

When King was resentenced in 2008, the Guidelines would have allowed him to receive a reduced sentence of 170 months incarceration had Amendment 750 been in effect at that time. USSG § 1B1.10(b) (2000 ed.). However, with the initial and subsequent enactments of Section 1B1.10(b)(2)(A), the extent to which King's sentence could be reduced was limited; Section 1B1.10(b)(2)(A) effectively increased King's reduced sentence to no less than 235 months incarceration. USSG § 1B1.10(b)(2)(a) (2012 ed.); USSG, App. C, Amdt. 750 (2011).

The Court in *Peugh* held that "the *Ex Post Facto Clause* forbids the government to enhance the measure of punishment by altering the *substantive formula* used to calculate the applicable sentencing range." 133 S. Ct. at 2088 (quoting *Morales*, 514 U.S. at 505) (internal alterations and quotation marks omitted) (emphasis supplied). Just as in *Peugh*, "[t]hat is precisely what the amended Guidelines did here." *Id.* Given the Supreme Court's holding in *Dillon* that the policy statement at Section 1B1.10 is binding on sentencing courts, Subsection (b)(2)(A) has exactly the forbidden effect identified by the Court in *Peugh*; it enhances the way

courts determine the applicable reduced Guidelines range by altering the "substantive formula" used to calculate it. Thus, the Commission has created a "sufficient risk" that King's sentence will be higher with the current version of Section 1B1.10(b)(2)(A) in effect. *See Peugh*, 133 S. Ct. at 2088 (citing *Garner*, 529 U.S. at 251). Therefore the Commission "offended one of the principle interests that the *Ex Post Facto* Clause was designed to serve, fundamental justice." *Id*. (quoting *Carmell*, 529 U.S. at 531) (internal quotation marks omitted).

Accordingly, the Court finds that Subsection (b)(2)(A) of Section 1B1.10 violates the *Ex Post Facto* Clause because it alters the formula used to arrive at the applicable reduced Guidelines sentencing range pursuant to a Section 3582(c)(2) motion, and in application has the effect of eliminating the discretion possessed by sentencing courts to reduce a defendant's term of imprisonment below the advisory Guidelines range and thus effectively increases the Guidelines range to which a defendant's reduced sentence is subject. *Cf. Peugh*, 133 S. Ct. at 2087-88. For these reasons, the Court holds that Section 1B1.10(b)(2)(A) of the Guidelines is unconstitutional.

Having concluded that Section 1B1.10(b)(2)(A) is an invalid *ex post facto* law, the Court turns to its severability from the rest of Section 1B1.10. "Generally speaking, when confronting a constitutional flaw in a statute, [courts] try to limit the solution to the problem, severing any problematic portions while leaving the remainder intact." *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*,—— U.S. ——, ——, 130 S. Ct. 3138, 3161 (2010) (quoting *Ayotte v. Planned Parenthood of N. New Eng.*, 546 U.S. 320, 328-29 (2006)) (internal quotation marks omitted). The invalidity of one provision in a law on constitutional grounds does not necessarily affect the continuing validity of the remaining provisions of that law. *Champlin Ref. Co. v. Corp. Comm'n of Okla.*, 286 U.S. 210, 234 (1932). The "normal rule" governing such a case is

"that partial, rather than facial, invalidation is the required course." *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 504 (1985). The remaining portions of Section 1B1.10 are constitutionally valid and capable of "functioning independently" of Subsection (b)(2)(A). *See Booker*, 543 U.S. at 258-59 (Breyer, J., opinion of the Court in part—remedial majority opinion) (citing *Regan*, 468 U.S. at 652-53; quoting *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 684 (1987)). Thus, in light of the Court's holding, Subsection (b)(2)(A) must be severed from the remaining portions of Section 1B1.10.

In light of this conclusion, the Court denies the Government's motion for reconsideration. The only argument advanced by the Government as to why the Court must reconsider its prior Order in this case is that the Court was precluded from taking the action it did in light of Section 1B1.10(b)(2)(A). (R. 953, Gov.'s Emerg. Mot. at 2-3; R. 959, Gov.'s Reply at 8-10.) With the excision of Subsection (b)(2)(A), however, the Court maintained the discretion to reduce King's sentence to a term of imprisonment below the minimum of the amended advisory range. Therefore, the Government's motion for reconsideration must be denied.

## VII.   Conclusion

As detailed in this opinion, our Country's struggle with setting the appropriate penalty levels for crack cocaine violations has been complex and continuous. *See, e.g.*, The New York Times, Editorial Board, "Sentencing Reform Starts to Pay Off," August 2, 2013 (available at http://www.nytimes.com/2013/08/02/opinion/sentencing-reform-starts-to-pay-off.html?_r=0) (last visited August 5, 2013). The Supreme Court's clear guidance on this issue is that district court judges are obligated to use their best judgment to ensure that each sentence for every crack cocaine offender is the product of an overall evaluation of individual, offender characteristics and the unique circumstances of the offense before the court. This evaluation should be guided,

but not restrained, by the advisory Sentencing Guidelines—both in prospective and retroactive application.  It is this Court's considered judgment that Thomas King has already served a sufficient but no greater than necessary sentence by completing a sentence of 170 months—given the circumstances of his offense and his changed individual characteristics.  For the foregoing reasons, the Government's motion to reconsider (R. 953) is DENIED.

ENTERED: _____

Chief Judge Rubén Castillo
United States District Court

Dated: August 5, 2013